IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTMINSTER HOUSE, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>FRANK JAO, an individual, and HAI NGOC DINH, an individual,<br><br>    Defendants. | No. C 12-02026 WHA<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## STATEMENT

The background appears in the order dated September 6, 2012 (Dkt. No. 32). In brief, this action concerns plaintiff Westminster House, LLC and its claim for breach of a loan guarantee. Defendant guarantors are Frank Jao and Hai Ngoc Dinh. Only Westminster and Dinh have moved for summary judgment, against each other. Jao has signed a settlement term sheet with Westminster.

Jao and Dinh were the sole officers and directors of Moran Property GP, Inc. ("Moran G.P."). The corporation, in turn, was the only general partner of Moran Property Limited Partnership ("Moran L.P."). Moran G.P. possibly was a shell corporation because it conducted no business activity and had no assets (Dinh Decl. ¶¶ 3, 4, 7, 9).

In February 2006, HSBC Realty Credit Corporation (USA) agreed to loan Moran L.P. $29,635,000 to finance a condominium project in Westminster, California. This loan agreement, along with the accompanying loan documents, was negotiated between Moran L.P. and HSBC

and drafted by their respective counsel (Balombin Decl. ¶ 3). To evidence HSBC's loan, Moran L.P. executed a written promissory note. A trust deed then secured Moran L.P.'s obligation. Jao and Dinh also signed a guarantee to induce HSBC to fund the loan, such that they unconditionally guaranteed an amount not to exceed 30% of the original loan amount or, upon completion of construction, 15% of the original loan amount.

The loan went into default. HSBC then entered into a series of forbearance agreements with Moran G.P., Jao, and Dinh, such that HSBC agreed to forbear from exercising its rights and remedies under the guarantee and other loan documents. Later, in January 2011, the trustee under the trust deed recorded a notice of default. A nonjudicial foreclosure sale then followed. As the purported assignee of HSBC's rights, Westminster seeks to recover on the large deficiency resulting from the sale.

Both sides now seek summary judgment. Evidently, because Westminster has a separate settlement with Jao, Westminster's motion for summary judgment is only directed at Dinh and his guarantee obligation of $9,357,600.

**ANALYSIS**

On the summary judgment record, a genuine issue of material fact exists over whether or not the deed of trust was meant to secure the guarantee. This order need not lay out the competing evidence. Suffice it to say that the interlocking definitions in the loan documents leave room for doubt over the parties' intent.

Regardless of the outcome of that issue, however, the lender in this case has a strong argument that the guarantor waived any direct or indirect protection of Section 580d when he agreed to the following (Shanley Exh. 9 at 5):

> The Lender may collect from the Guarantors even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Guarantors may have to collect from the Borrower. This is an unconditional and irrevocable waiver of any rights and defenses the Guarantors may have because the Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

2

> The Guarantors waive all rights and defenses arising out of an election of remedies by Lender, even though the election of remedies, such as nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Guarantors' rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise.

It is true that an intermediate state appellate decision once held that special, clear-cut language was needed to effect such a waiver. *Cathay Bank v. Lee*, 14 Cal. App. 4th 1533, 1539 (1993). Thereafter in 1996, however, the California Legislature overruled this with a new Section 2856 of the California Civil Code. Under new Section 2856(a)(2) and (3), at all times material to our case, "any guarantor" may waive:

> Any rights or defenses the guarantor or other surety may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor.
>
> Any rights or defenses the guarantor or other surety may have because the principal's note or other obligation is secured by real property or an estate for years. These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation.

Under this express language quoted above, Dinh waived any and all protection of Section 580d, direct or indirect. This order now so holds, subject only to the caveat in the next paragraph.

The caveat is that under California law, if the guarantor is deemed to be the principal obligor (via the sham-guarantee defense), then the guarantor-obligor has all of the protection of Section 580d and that protection is unwaivable at the time of the original loan transaction. *River Bank America v. Diller*, 38 Cal. App. 4th 1400, 1420 (1995). On this summary judgment record, a genuine issue of material fact exists as to whether or not the guarantor here was the intended obligor under the sham-guarantee defense. If Dinh is ultimately held to have been the primary obligor, then we must reach the further issue of whether Dinh *subsequently* waived the protection of Section 580d in the forbearance agreements. If Dinh ultimately is held *not* to so

qualify as the primary obligor, then this order holds that Dinh loses and must pay on the guarantee.

This order recognizes one other *possible* scenario wherein Section 2856 might not apply, namely where the guarantor pledges his own separate property as security and thus becomes a principal obligor. That scenario has no relevance here. Dinh pledged no property of his own.

As both parties conceded at hearing, post-default waiver of Section 580d can occur if there is "separate consideration" in a subsequent agreement. *Torrey Pines Bank v. Hoffman*, 231 Cal. App. 3d 308, 323–24 (1991). Westminster has, as yet, provided no evidence of such consideration. Nor has Westminster pointed to any case law providing that forbearance alone could constitute separate consideration. In fact, a California Court of Appeal in the *Torrey Pines* decision found no consideration where guarantors signed a forbearance agreement with a bank, in part because the agreement did not modify the note or trust deed and because the agreement made no specific mention of antideficiency protections. So too here. At trial, and on better briefing, the Court may yet hold that the waiver in the forbearance agreements was sufficient but this record and this briefing are inadequate.

In the Court's view, in summary, a pivotal issue is the sham-guarantee defense as is the post-default waiver issue. The case will go to trial on all issues, however, save and except the ruling above on Section 2856, for which partial summary judgment is now granted in the lender's favor. Please do not ask to submit yet more briefing. The Court has already allowed that. It is now time to try the case.

Unless soon dismissed, Jao remains a defendant and the trial will have to include him as well. Plan accordingly, please.

**IT IS SO ORDERED.**

Dated: October 16, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4